BENJAMIN THOMAS, JR., et al.,

*v.*

THE BOARD OF EDUCATION OF THE CITY OF PATERSON et al.

[Decided April 8th, 1911.]

In a suit under the Municipal Improvements Lien act (*3 Comp. Stat. p. 3315*) complainant claimed a lien under his stop notice, and defendant claimed a prior lien under an equitable assignment from the contractor of moneys to be earned by the contractor under a contract which obligated him in consideration of $33,886 to do all the mason work upon a school building, according to certain "plans, specifications and proposals," and further provided that the other party, the board of education, might make "any alterations, deviations, additions or omissions" and that in such a case the contract should remain in force, a reasonable *addition* or deduction from the contract price being made. Payments were to be made monthly to the extent of eighty-five per cent. of the value of the

work actually done without regard to whether such work was mentioned in the specifications or covered by the provisions in the contract for additions, omissions, &c., the remaining fifteen per cent. being retained until completion of the whole work. The assignment recited the more important terms of the contract, including the provision that fifteen per cent. of the "contract price" was to be retained, and describing such fifteen per cent. as the sum of $5,082.90. The instrument then assigned "the said payment of the said sum of $5,082.90 according to the conditions of the specifications and the said contract" and constituted the assignee the attorney of the assignor "to enforce the payment of the said $5,082.90 according to * * * the conditions of the said specifications *and the said contract.*" The assignment, as it recites, was merely a collateral security to a promissory note for $2,200 and the interest thereon. The contractor after partly performing his contract and receiving partial payments, abandoned his contract, and the board of education after completing the unfinished work had $589, which the contending parties agreed was to be treated as money due the contractor under the contract.—*Held* (1), that the "contract price" was not necessarily the sum ($33,886) named as the agreed payment for the work described in the specifications, but the sum which should be earned under the contract as the figure named might be increased or diminished by additions to or omissions from the work specified; that the intent was to assign as a security not a portion of the retained fifteen per cent. but the retained sum in its entirety, the reference to the fifteen per cent. as a definite sum, $5,082.90, being merely by way of description; (2) that the assignment covered the entire residue ($589), which was the balance due to the contractor under his contract, although it appeared that the contractor had done excavation work under the contract but not described in the specifications, and that the reasonable value of such work had been found to be $400.

On final hearing on bill, answer and proofs taken in open court.

*Mr. Albert Comstock,* for the complainants.

*Mr. Edward F. Merrey,* for the board of education.

*Mr. Jacob Van Der Clock,* for Thomas Brogan.

*Mr. Michael Dunn,* for Matthew Nealon and Thomas Farnon, Jr.

STEVENSON, V. C.

The bill is filed to enforce a lien alleged to have been acquired by the complainants under the statute commonly called the Mu-

nicipal Improvements Lien act, approved March 30th, 1892. *2 Gen. Stat. p. 2078.* The defendant the board of education, the stakeholder, files an answer admitting that it holds the sum of $3,936.84 to which the defendants or some of them are entitled, and prays that the court may direct it in regard to the payment of said sum. This answer to a large extent makes the suit in effect an interpleader suit. All the parties agree that the amount of the stake which the defendant the board of education holds is correctly stated in the answer of that defendant. The whole contest lies between the following-named parties, to wit:

1. The complainants who claim a lien as aforesaid under the above-mentioned statute.

2. The defendants, the bondsmen of the defaulting and·absconding original contractor, Maloney, who finished the building after Maloney had abandoned his contract under a contract made between themselves and the board of education, and

3. The defendant Thomas Brogan, who claims that before the lien of the complainants was created by notice duly served under the statute, the entire fund had passed by an assignment to a party to whose rights he succeeded under a subsequent assignment.

I see no reason to alter the decision which I announced at the conclusion of the argument in regard to the rights of the bondsmen. Holding always in view the claims and admissions of these bondsmen contained in their answer, and in the argument of their counsel, I reached the conclusion announced at the end of the oral argument, that the bondsmen were entitled to receive from the fund $3,347.25, leaving a balance of $589.59 to be disposed of between the complainants and the defendant Thomas Brogan, the former claiming under their statutory lien, and the latter claiming under his assignment. Whether under the evidence which was produced in this cause or under evidence which might have been produced with a somewhat different view of the nature of the case from that which was accepted by counsel, the amount to be adjudged due to the bondsmen might have been altered, I shall not undertake to inquire. This is a case where in my judgment it is particularly the duty of the court to decide the case which has been argued and not construct

some other case out of the testimony which was not introduced by any party for that purpose.

In dealing with the contentions between the complainants as lien claimants and the defendant Brogan as assignee, I shall also take the case as it stands with the admissions which counsel for these parties respectively have made. It certainly might be argued that there never was any money which was due or became due to the contractor, Maloney, after he broke his contract and abandoned the same, and that therefore no lien could be created under the statute by notice, and no instrument could operate as an equitable assignment, there being nothing now in existence which potentially was the subject-matter of the assignment when the same was made. If Maloney never earned anything, except what he received in cash—if Maloney, neither at the time he absconded and abandoned his contract, or at any future time after the board of education had succeeded in procuring the completion of the building which he had wrongfully neglected and refused to complete in violation of his contract, could have maintained any action at law or in equity for the recovery of this $589.59 in question, it certainly is difficult to see how the complainants' statutory notice or the defendant Brogan's equitable assignment could in any way attach to this fund.

These two contestants, however, through their counsel insist that this $589.59 is to be treated as money due to Maloney under his contract, and, in view of the attitude of the board of education about which their answer filed in this cause leaves no question, and the attitude of the bondsmen which is equally clear, it cannot be said that the view of these rival defendants is without equitable support. The board of education, this public body, in effect, lays down the fund in court, making no claim to it, and I consider it the duty of this court to regard the fund as the property of Maloney subject to the claims of these contesting parties under their respective assignments, the one a voluntary assignment and the other an involuntary assignment under the provisions of the statute. It cannot be doubted that if this money belonged to Maloney it was earned by him under the contract, and hence was assignable and lienable. If the money never belonged to Maloney it remains the money of the board

of education and constituted a convenient fund out of which
the board could pay what was due to the bondsmen under
their contract with the board for the completion of the build-
ing. The board of education, however, makes no claim to
any part of the fund, but in effect pays it into court. The
court therefore has proceeded first to satisfy all claims of the
bondsmen set up in their answer and urged in the argument of
their counsel, which it finds due to them under their contract
for the completion of the building, and may then very properly
treat any residue as the property of Maloney and subject there-
fore to assignment and lien under the statute.

Counsel for the complainants limits his claim to the sum of
$400, an item allowed finally upon settlement of all accounts on
account of certain extra work in the way of excavation done by
Maloney before he abandoned his contract. As to the remainder
of the fund now under examination ($189.59) counsel admits
that the assignment of the defendant Brogan has priority.

Treating the entire fund ($589.59) as lienable under the
statute and as subject to transfer under an equitable assignment,
the whole controversy turns upon the question whether the as-
signment proved in this case operated to effect a transfer of the
whole fund or only part of it, viz., $189.49.

My conclusion from the premises assumed by both these con-
tending parties is that the equitable assignment carried the
whole fund, and the same must be awarded in its entirety to the
defendant Brogan, and I shall here endeavor briefly to set forth
the reason for this view. We have in hand what is essentially
the construction of the assignment under which the defendant
Brogan claims, and the assignment cannot be construed without
also construing a part of the contract to which the assignment
relates.

The fallacy which I think underlies the argument of counsel
for the complainants grows out of the distinction made between
what is called the contract price and any amounts earned and
paid for extra work. I think it is quite clear that all moneys
which Maloney earned or possibly could earn in the erection of
this building for the board of education were, and necessarily
would be, earned under the contract so as to become lienable

under the statute and the same of course would also be assignable.

According to the original contract between Maloney and the board of education, the former agreed in consideration of $33,-886 to do all the mason work upon a certain school building according to certain "plans, specifications and proposals" and furnish sufficient materials therefor. Certain specified work and material were to be done and furnished for a certain specified sum. But the contract provided that the board of education might at any time make "any alteration, deviations, additions or omissions," and that in such case the contract should remain in force with a reasonable addition or deduction from the contract price, as the case might be. Thus the contract price was not a sum specified, but a sum specified subject to being increased or diminished by the action of the board of education in making alterations which at any time they had the right to make.

Payments according to the contract were made "upon the installment plan, to wit, monthly," as the work proceeded to the extent of eighty-five per cent. of the value of the work done, fifteen per cent. being retained "until the final completion of the said building and as a guaranty for the protection of the said board until the final acceptance of the said building by the said board," at which time the retained fund was payable to Maloney, "but only upon the presentation to the said board" of the architect's final certificate. It may be remarked in passing that these provisions bear with great force upon the question whether in fact any money ever was earned by Maloney or became payable to him under the contract so as to be lienable or assignable, but we have got beyond this point. The point to hold distinctly in view is that the fifteen per cent. was to be retained upon everything that was due upon the contract, including work not mentioned in the specifications but called for by the board of education under the provision of the contract above set forth. One week after this building had been commenced by Maloney the board of education had the right to demand its extension so as to make it larger and the extra work so called for might amount to say thirty per cent. of the contract price, or in round numbers,

$10,000. The work on the whole building thus enlarged would proceed from month to month, and the contractor, Maloney, would become entitled to eighty-five per cent. upon the work which the architect certified had been done without regard to whether such work was mentioned in the specifications or provided for in the contract in the provision for alterations above set forth.

The assignment under which the defendant Brogan claims was made by Maloney to Thomas Farnon, Jr., and bears date June 22d, 1904, twenty days after the contract between Maloney and the board of education was made. It is evident that there was little if any money then in existence upon which the assignment could operate. The great force of the instrument consists in its operation as an equitable assignment upon money which the assignor, Maloney, contemplated he would earn by the performance of the contract. The assignment recites the more important provisions of the contract—that Maloney had agreed to "complete a certain school house; that fifteen per cent. of the contract price should be retained until after the completion" of the said school house, and then be paid upon the certificate of the architect, and that fifteen per cent. of the contract price of the building of said school house was $5,082.90.

The instrument then proceeds to assign to the said Thomas Farnon, Jr., as collateral to a certain note for $2,200 which afterwards became the property of the defendant Brogan, "the said payment of the said sum of $5,082.90 according to * * * the conditions of the specifications and the said contract," and all the "right, title and interest" of the assignor therein and constituted the assignee, Thomas Farnon, Jr., the assignor's attorney, "to enforce the payment of the said $5,082.90 according to the terms and specifications of the said specifications *and the said contract."*

In my opinion this instrument assigned the reserved fifteen per cent. subject to increase or decrease as changes and alterations might be made by the board of education in the progress of the work according to the terms of the contract. It is true that the parties to this assignment described the subject-matter of the assignment with the contract price in view, but the important

matter which they had in their minds was the reserved fifteen per cent. which, as the assignment recited, when calculated upon what is called the contract price, viz., the specified sum for the specified work, would amount to $5,082.90. The general intent is not affected in my opinion by a meagre or narrow, or even erroneous, description which evidently arose from the failure of the parties to the assignment to think out all the possible situations which might arise under the contract. They did not stop to consider that the fund reserved might be less or might be more than the amount which they calculated by taking fifteen per cent. of the so-called contract price. Notwithstanding the recitation in the assignment, the fact remains that fifteen per cent. of the contract price of the building would be $5,082.90 only in case the somewhat extraordinary result should ensue that no alteration of any kind whatever was made by the board of education during the progress of the work which increased or diminished its cost. Reading this assignment "from the four corners" I think it must be deemed as an equitable assignment from Maloney to Farnon of the entire fifteen per cent. which, under the terms of the contract, was to be reserved by the board of education, and was to become payable upon a certain condition thirty days after the completion of the work. If the building had been enlarged so as to add $10,000 worth of so-called extra work, the retained fifteen per cent. would be $1,500 greater than the sum stated in this assignment and contemplated by the parties to the assignment as the exact amount of the retained fund which they meant to subject to their assignment. If, on the other hand, the board of education had reduced the cost of the building by $10,000, the retained fifteen per cent. would have been $1,500 less. We must read the contract and the assignment together and consider the obvious intention of the parties to the assignment, bearing in mind also that mere misdescriptions have very little effect in the way of defeating the general intent of an instrument. If these parties had had a particular sum part and parcel of the retained fifteen per cent. in view to secure $2,200, it was very easy and would have been very natural for them to employ unmistakable language to effect that result. They not only did not use such language, but

they assigned an entire fund, as they viewed it at the time, amounting to $5,082.90, down to the odd cents to secure less than half this amount. It was not a portion of a fund which these parties had in view but the retained sum in its entirety. What they had in mind, very clearly defined, was the extent of the debt due on Maloney's note which was to be secured by the assignment and eventually might be payable out of the retained fund. When one sells a tract of land which has a definite value per acre, he may be expected to have a very definite idea of the number of acres which he is conveying and to make that number appear clearly in his deed. If, however, one is mortgaging a tract of land to secure a debt, there is no necessity for considering carefully the area of the land to be mortgaged or describing that area with accuracy in the instrument. A mistake and a misdescription in regard to the extent of the subject-matter of an absolute conveyance may involve the maker of such conveyance in very substantial loss, while the same mistake and misdescription in a mortgage of the same property would be a matter of no consequence whatever. In this instance, the parties to this assignment were intent upon securing a note for $2,200, and it was not necessary for them to read the contract with the city carefully, and consider all its provisions when they were merely describing the fund which Maloney expected to earn and which he was merely using as security for the money which he was borrowing. If Farnon had been acquiring absolutely Maloney's potential interest in a fund which would be retained from money which Maloney expects to earn, it is safe to say that he would have read his assignment, and also the contract to which it referred, with very great care, in order to discover just what the extent of the payment might be under every supposable set of circumstances; but he had no motive to make such a careful inquiry when he was merely acquiring a mortgage interest in this fund which would remain constant whatever the extent of the fund might be. In brief, the parties to this assignment would probably not be liable to make a mistake in regard to the extent of the mortgage interest which the assignee was acquiring, while they might be very liable to be careless and make a mistake of

description which merely affected the extent of the thing that was mortgaged.

Accepting the premise that the fund in dispute at some time became due to Maloney under the terms of this contract, so as to be assignable and lienable under the statute, I see no escape from the conclusion that the assignment has priority, and that therefore the entire residue ($589.59) must be awarded to the defendant Brogan.

Some questions probably will arise as to the form of the decree, and therefore the decree may be settled on notice.